# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Glenda Moreno,<br><br>        Plaintiff,<br><br>v.<br><br>Minnesota Life Insurance Company, et al.,<br><br>        Defendants. | No. CV-14-02022-TUC-FRZ (CRP)<br><br>**REPORT & RECOMMENDATION** |

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") for failure to state a claim (Doc. 22). For the following reasons, the Magistrate Judge recommends that the District Court grant in part and deny in part Defendants' Motion to Dismiss.

**FACTUAL & PROCEDURAL BACKGROUND**

This action was removed from state court. Thereafter, Defendants moved to dismiss the Complaint. (Doc.16). In response, Plaintiff conceded that her Complaint was deficient (Doc. 18), and filed her FAC (Doc. 17). Pursuant to a subsequent stipulation filed by the parties (Doc. 20), the Court denied Defendants' Motion to Dismiss (Doc. 16) without prejudice as moot. (Doc. 21). Defendants now seek dismissal of Plaintiff's FAC.

This action arises out of an accidental death and dismemberment insurance policy ("Policy") purchased by Plaintiff's now deceased father. In her FAC, Plaintiff asserts five claims for relief: (1) consumer fraud under A.R.S. §44-1521, *et seq.*; (2) insurance

fraud under A.R.S. §20-443, *et. seq.*; (3) negligent misrepresentation; (4) fraudulent concealment; and (5) estoppel.

Plaintiff alleges that in April 2012, her father, Jose Reynoso, received a written solicitation through his Wells Fargo bank account for the purchase of the Policy at issue. (FAC, ¶13 & Exh. 1 (Activation Form)).  The Activation Form, which Reynoso received at his home, indicated in 12 point, bold print that he was "eligible for up to $300,000 of protection:...[and indicated in smaller, non-bold print:] for as little as $5.50 per month per $50,000 of coverage…."; however, a footnote attached to that statement indicated in even smaller print: "All coverage is reduced by 50% at age 70."  (FAC, ¶¶24, 26, 27; 58, 68 & Exh. A).  In April 2012, Reynoso, a retired landscape laborer who primarily spoke Spanish, was 83 years of age.  (FAC, ¶ 11). Plaintiff further alleges that Defendants Minnesota Life Insurance Company ("MLIC") and Wells Fargo, N.A., knew Reynoso's age at the time he purchased the Policy and paid the premium.  (FAC, ¶38).  The Activation Form also listed amounts of coverage "Recommended for J. Reynoso[.]" (FAC, Exh. A; *see also* FAC, ¶15).  The recommended amounts were $300,000, $150,000, $100,000 and $50,000, with $300,000 appearing in larger print than the other listed amounts.  (*Id.*).  Next to each recommended coverage amount was a box for Reynoso to check.  (FAC, ¶29 & Exh. A).  He marked the box for $300,000 and he named his daughter, "Brenda Moreno", as beneficiary.  (FAC, Exh. A*; see also* FAC, ¶¶15-16).  Reynoso paid the monthly premiums of $33.00 until the time of his death by accidental means in February 2013.  (FAC, ¶¶15, 17-19, 32; *see also* FAC, 33 (Defendant MLIC in cooperation with Defendant Wells Fargo Bank, N.A….until the accidental death of Jose C. Reynoso deducted from [his] checking account and paid to Defendant MLIC the $33.00, amount stated in the Activation From for $300,000 worth of coverage ($5.50 per $50,000 worth of coverage) per month.")).  Plaintiff also alleges that Defendant MLIC "represented in the Activation Form…" Reynoso received in April 2012, that it would pay Reynoso's designated beneficiary "$300,000 when he died of an accidental cause provided he pay $5.00 per $50,000 in coverage per month."  (FAC,

¶31). Plaintiff, as beneficiary under the Policy, received $150,000, rather than $300,000. (FAC, ¶20).

Plaintiff alleges that Defendant MLIC "hid" the statement that coverage would be reduced for insureds over 70 "amongst other fine text unrelated to the terms of the insurance in non-bold print in a size less than half of the bold print offering coverage of $300,000." (FAC, ¶35; *see also* FAC, ¶38 (that Defendant MLIC "intended to reduce the $300,000 coverage by 50% was buried at the bottom of the activation [form] in fine print amongst other text, numbers and symbols unrelated to coverage."); ¶40 (Defendant MLIC "suppressed…" such fact).[1]

Defendants seek dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**STANDARD**

"'To survive a motion to dismiss [under Fed.R.Civ.P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face;' that is, plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Telasaurus VPC, LLC. v. Power,* 623 F.3d 998, 1003 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Moss v. United States Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (to defeat a motion to dismiss, the "non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 530 U.S. 544 (2007).

---

[1] The FAC quotes the following text from the Activation Form: "All coverage is reduced by 50% at age 70" set out in a very small font size. (*See e.g.* FAC, ¶35). Although Defendants correctly point out that "[t]he font size actually used in the Activation Form is larger than the font size used in the Amended Complaint[]",(Motion, p. 4), the font used for the footnote in the Activation Form is considerably smaller than that used for the majority of the form Reynoso completed. (*See* FAC, Exh. A).

- 3 -

.

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint..." does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678; *see also Telasaurus*, 623 F.3d. at 1003 (pleadings that are no more than legal conclusions "'are not entitled to the assumption of truth.'" (quoting *Iqbal*, 556 U.S. at 679). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, the court "cannot assume any facts necessary to [the plaintiffs']...claim that they have not alleged." *Jack Russell Terrier Network of Northern Calif. v. American Kennel Club, Inc*., 407 F.3d 1027, 1035 (9th Cir. 2005).

However, the court will assume "'well-pleaded factual allegations,'...to be true, 'and then determine whether they plausibly give rise to an entitlement to relief.'" *Telasaurus*, 623 F.3d. at 1003 (quoting *Iqbal*, 556 U.S. at 679); see also *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Determining plausibility is a "context-specific task..." that requires the court to "draw on its judicial experience and common sense." *Id.* at 679. A complaint cannot survive dismissal where the court can only infer that a claim is merely possible rather than plausible. *Id.*

Additionally, under Rule 9 of the Federal Rules of Civil Procedure, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting…" the fraud. Fed.R.Civ.P. 9(b). "Rule 9(b) ensures that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir. 1985). "A pleading is sufficient under [R]ule 9(b) if it identifies the circumstances

- 4 -

constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir. 1989).

Plaintiff has attached a copy of the Activation Form to her Complaint. (*See* FAC, Exh. A). On a motion to dismiss, the Court may properly consider exhibits attached to the complaint. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2002), *impliedly overruled on other grounds as discussed in Gallardo v. DiCarlo*, 203 F.Supp.2d 1160, 1162 n.2(C.D. Cal. 2002).

**STATUTORY FRAUD CLAIMS (CLAIMS ONE AND TWO)**

Under Arizona's consumer fraud statute,

> [t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

A.R.S. §44-1522(A).

Likewise, Arizona's insurance fraud statute, A.R.S. §20-443, upon which Plaintiff relies in her second claim for relief, prohibits an insurer from misrepresenting the terms or benefits of an insurance policy. "The Arizona Consumer Fraud Act, A.R.S. §14-1521…, and the Unfair Insurance Practices Act, A.R.S. §20-443…are both statutory fraud claims and have identical elements." *Stratton v. American Medical Security, Inc.,* 2008 WL 2039313, *7 (D. Ariz. May 12, 2008). In addressing Plaintiff's statutory fraud claims, the parties primarily rely on case law construing the Consumer Fraud Act. The parties do not suggest that a different holding would apply to the Unfair Insurance Practices Act than to the Consumer Fraud Act, which is sound given the fact that both statutes have identical elements.

To succeed on a statutory fraud claim the "plaintiff must show a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and consequent and proximate injury resulting from the promise." *Id.* (citing *Kuehn v. Stanley,* 208 Ariz. 124, 129, 91 P.3d 346, 351 (2004)). Although "[a] prerequisite to such

1  damages is reliance on the unlawful acts[]", *Peery v. Hansen,* 585 Ariz. 266, 269, 585
2  P.2d 574, 577 (App. 1978), the reliance need not be reasonable. *Kuehn,* 208 Ariz. at 129,
3  91 P.3d at 351 ("An injury occurs when a consumer relies, even unreasonably, on false or
4  misrepresented information."); *see also Stratton v. American Medical Security, Inc.,* 266
5  F.R.D. 340, 348 (D. Ariz. 2009).  "In addition, allegations of fraud must be specific
6  enough to give Defendants notice of the particular misconduct, so to allow them the
7  ability to defend against the charge by doing more than just denying the allegation."
8  *Stratton,* 2008 WL 2039313 at *7 (citing Fed.R.Civ.P. 9); *see also Bergdale v.*
9  *Countrywide Bank FSB,* 2013 WL 105295, *3 (D. Ariz. Jan. 9, 2013) (Rule 9
10 requirements apply to claims brought under Arizona's Consumer Fraud Act).

11      Defendants argue that Plaintiff fails to state with specificity any representation made by any Defendant that was false, deceptive or misleading. (Motion, p. 7). Instead, Defendants argue that "[t]he fact that one provision in the Activation Form qualifies another does not render either provision false." (*Id.*). Defendants also stress that Plaintiff does not allege that she was aware of the Policy before Reynoso's death or that she, rather than Reynoso, "relied upon whatever representation she believes was false or deceptive." (*Id.* at pp. 4, 7).

18      The FAC sets out factual allegations supporting Plaintiff's statutory fraud claims. Plaintiff cites wording, emphasized by the size of type font used in the Activation Form, indicating that Reynoso was eligible for up to $300,000 of coverage and that such an amount was recommended for him  (FAC, ¶¶25, 26, 28, 63, 75), when all the while Reynoso was not entitled to such coverage due to his age.  According to Plaintiff, Defendant MLIC represented in the Activation Form that "Reynoso was eligible for and entitled to $300,000 in coverage so long as he paid Defendant [MLIC] $5.50 per $50.000 in coverage or $33.00." (FAC, ¶34; *see also* FAC ¶60 alleging MLIC's statement was a misrepresentation)). Plaintiff alleges that Defendant MLIC. "hid the…statement at the bottom of the activation form an inch below the signature line amongst other fine text unrelated to the terms of the insurance in non-bold  print in a size less than half of the

- 6 -

bold print offering coverage for $300,000: 'All coverage is reduced by 50% at age 70.'" (FAC, ¶32 (reduced font size in original omitted)). Plaintiff also alleges that Defendants knew that Reynoso "was 83 years old when he purchased the [Policy]…yet the only notice…" that coverage would be reduced "by 50% was buried at the bottom of the activation [form] in fine print amongst other text, numbers and symbols unrelated to coverage." (FAC, ¶38). According to Plaintiff, Defendant MLIC "suppressed the fact that it intended to pay Jose C. Reynoso's beneficiary only 50% of the coverage requested and paid for by Jose C. Reynoso each month until his death by highlighting in large bold print at the top of the page that Jose C. Reynoso could have $300,000 in coverage and burying in fine print one inch below the form's signature line amongst text, numbers and symbols unrelated to coverage a term that 'All coverage is reduced by 50% at age 70'…."(FAC, ¶40 (reduced font size in original omitted); *see also* FAC, ¶¶41, 48, 49, 59, 63)), and that such act was misleading and deceptive (FAC, ¶47, 52, 60-62, 66; *see also* FAC, ¶50 (alleging MLIC deceived Reynoso and his intended beneficiary)). Plaintiff also alleges that she and her father relied on the representation in the Activation Form that he was entitled to $300,000 in coverage, and he had paid the premium for same. (FAC, ¶¶45, 54, 64).

Plaintiff maintains, and Defendants have not disputed, that Plaintiff, who Reynoso specifically listed as a beneficiary on the Activation Form, is a third-party beneficiary. *See e.g. Araiza v. U.S. West Business Resources, Inc.,* 183 Ariz. 448, 454, 904 P. 2d 1272, 1278 (App. 1995) ("For a third party to maintain an action on a contract, the contract must have been entered into for the express benefit of the third party; the party cannot be merely an incidental beneficiary….The benefit must be both intentional and direct, and it must definitely appear that the parties intend to recognize the third party as the primary party in interest.")(internal quotation marks and citations omitted).

The parties have cited no Arizona cases discussing whether a third-party beneficiary has standing to bring suit under the statutes relied on by Plaintiff. Defendants cite the holding in *Sullivan v. Pulte Home Corp.,* 231 Ariz. 53, 60-61, 290 P.3d 446, 453-54 (App. 2012), *reversed on other grounds,* 232 Ariz. 344, 306 P.3d 1 (2013), that

subsequent home purchasers could not sue the homebuilder under the Consumer Fraud Act where there was no transaction or contract between the parties. Defendants' reliance on *Sullivan* is inapposite given that the transaction between Reynoso and Defendants was for the express benefit of Plaintiff. *Sullivan* did not address application of the Consumer Fraud Act in the context of a third party-beneficiary.

Plaintiff points out that the Consumer Fraud Act "is designed to root out and eliminate 'unlawful practices' in merchant-consumer transactions." *People ex rel. Babbitt v. Green Acres Trust,* 127 Ariz. 160, 164, 618 P.2d 1086, 1090 (App. 1980), *superseded by statute on other grounds as discussed in State ex rel. Corbin v. Pickrell,* 136 Ariz. 589, 592, 667 P.2d 1304, 1307 (1983), *superseded by statute on other grounds as discussed in Lifeflite Medical Air Transport, Inc. v. Native American Air Services, Inc.* 198 Ariz. 149, 7 P.3d 158 (App. 2000). In interpreting statutes, courts look to the intent of the legislature as well as the context of the statute, the language used, the subject matter, the effects and consequences and the spirit and purpose of the law. *Sellinger v. Freeway Mobile Home Sales, Inc.,* 110 Ariz. 573, 575, 521 P.2d 1110, 1121 (1974) (citations omitted). "Statutes shall be construed with the view to effect their object and promote justice." *Id.* at 576, 521 P.2d at 1122. (holding that the Consumer Fraud Act created a private cause of action). The clear purpose of the Consumer Fraud Act "is to protect the public from deceptive acts…." *State of Ariz. ex. Re. Babbitt v. The Goodyear Tire & Rubber Co.,* 128 Ariz. 483, 486, 626 P.2d 1115, 1118 (App. 1981). Moreover, Arizona courts have recognized that the Consumer Fraud Act "'is a broadly drafted remedial provision designed to eliminate unlawful practices in merchant-consumer transactions.' *Madsen v. W. Am. Mortg. Co.,* 143 Ariz. 614, 618 694 P.2d 1228, 1232 (App. 1985). The CFA 'provide[s] injured consumers with a remedy to counteract the disproportionate bargaining power often present in consumer transactions. *Waste Mfg. & Leasing Corp. v. Hambicki,* 183 Ariz. 84, 88, 900 P.2d 1220, 1224 (App.1995).'" *Shaw v. CTVT Motors, Inc.,* 232 Ariz. 30, 32, 300 P.3d 907, 909 (App. 2013) (holding economic loss rule does not apply to the Consumer Fraud Act).

In light of the allegations in the FAC, the insured in this case, Reynoso, would have a cause of action for statutory fraud. No language in either the Consumer Fraud Act or the Unfair Insurance Practices Act suggest that the beneficiary of a life insurance policy would not also have a cause of action in place of the insured under similar circumstances. Nor is there any "logical basis upon which to distinguish [the beneficiary] from the insured…" on the facts of this case. *Gould v. Mutual Life Insur. Co. of N.Y.,* 37 Wash.App. 756, 759, 683 P.2d 207, 208 (App. 1984) (holding that beneficiary of a life insurance policy had cause of action for bad faith against insurer under the Washington Consumer Protection Act), *overruled on other grounds Haberman v. Washington Public Power Supply Sys.,* 109 Wash 107, 744 P.2d 1032 (1987); *see also Bryant v. Country Life Insur. Co.,* 414 F.Supp.2d 981, (W.D. Wash. 2006) (recognizing that beneficiary of a life insurance policy was owed a direct contractual obligation by the insurance company and could sue under the policy to enforce that obligation); *cf. Kersh v. United Healthcare Insur. Co.,* 946 F.Supp.2d 621, 644 (W.D. Tex. 2013) (noting that under Texas law "[a] third party beneficiary may qualify as a consumer of goods or services, as long as the transaction was specifically required by or intended to benefit the third party and the good or service was rendered to benefit the third party" and holding that beneficiary of life insurance policy could bring claims under Texas insurance code and Deceptive Trade Practices Act) (citations omitted).

Plaintiff also points out that at the time the insurer is obligated to perform under a life insurance policy, the insured has ceased to exist and, therefore, consumer fraud protection would be meaningless unless it extended to the third-party beneficiary. (*See* Response, p. 14). In light of the broad remedial purposes of the Consumer Fraud Act, Plaintiff's argument is well taken in context of a life insurance policy. Significantly, both the insured and insurer specifically intended Plaintiff to receive the benefit of the transaction. Plaintiff alleges that Reynoso relied on the large print of the Policy Activation Form advising he was eligible for up to $300,000 in coverage and recommending that same amount of coverage. Plaintiff also alleges that she relied on the statements, as well. Plaintiff's ability to prove reliance under the statutes is a question for

- 9 -

summary judgment, not a motion to dismiss under Rule 12(b)(6). Under the circumstances of this case, Defendants' Motion to Dismiss Plaintiff's claims under A.R.S. §§ 44-1522 and 20-443 should be denied.

**COMMON LAW CLAIMS: NEGLIGENT MISREPRESENTATION & FRAUDULENT CONCEALMENT (CLAIMS THREE AND FOUR)**

Arizona recognizes the tort of negligent representation as defined by the Restatement (Second) of Torts §552. *Haisch v. Allstate Insur. Co.,* 197 Ariz. 606, 610, 5 P.3d 940, 944 (App. 2000). The elements of negligent misrepresentation are: (1) the defendant provided false information in a business transaction; (2) the defendant intended for the plaintiff to rely on the incorrect information or knew that plaintiff reasonably would rely; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; (4) the plaintiff justifiably relied on the incorrect information; and (5) resulting damage. *KB Home Tucson, Inc. v. Charter Oak Fire Insur. Co.,* __ Ariz. __, __ P.3d __, 2014 WL 6678662, *7 n.7 (citing *Mur–Ray Mgmt. Corp. v. Founders Title Co.*, 169 Ariz. 417, 422–24, 819 P.2d 1003, 1008–09 (App.1991)). "A claim for relief for negligent misrepresentation is one governed by the principles of the law of negligence. Thus, there must be 'a duty owed and a breach of that duty before one may be charged with the negligent violation of that duty.'" *Id.* (quoting *Van Buren v. Pima Cmty. Coll. Dist. Bd.,* 113 Ariz. 85, 87, 546 P.2d 821, 823 (1976)).

Arizona also relies on the definition of fraudulent concealment set out the Restatement (Second) of Torts, §550:

> One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering.

*Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local no. 396 Pension Trust Fund,* 201 Ariz. 474, 495, 38 P.3d 12, 34 (2002) (quoting Restatement (second) of Torts §550 (1976).

Defendants raise the same challenges to Plaintiff's common law claims as they did

to Plaintiff's statutory fraud claims:  that Plaintiff's allegations lack specificity as to any representation made by any Defendant that was false, deceptive or misleading, that Plaintiff does not allege that she was aware of the Policy before Reynoso's death or that she, rather than Reynoso, "relied upon whatever representation she believes was false or deceptive." (Motion, pp. 4, 7).   Plaintiff does not specifically respond to Defendants' argument regarding her common law claims.  Instead, her response focuses on her ability to bring the statutory fraud claims, relying on her status as a third-party beneficiary of the transaction between Reynoso and Defendants, and stating that any "reliance needed…would be the reliance of the policyholder Mr. Reynoso at the time he contracted for and paid for the $300,000 death benefit for [Plaintiff.]." (Response, pp. 16-20).  As discussed above, Plaintiff should be permitted to proceed with her statutory fraud claims as a third-party beneficiary of the subject policy.

However, Plaintiff has not argued that her status as a third-party beneficiary confers standing to allege her common law claims.  Nor does she provide any rationale to counter Defendants' argument that her common law claims should be dismissed under Rule 12(b)(6).  With regard to Plaintiff's negligent misrepresentation claim, the FAC is devoid of any factual allegations that the alleged misrepresentation/concealment induced *her* to act.  As Defendants point out, Plaintiff does not allege that she was aware of the Policy before Reynoso's death.  Nor does she allege facts to sufficiently show that she was a party to the transaction giving rise to a fraudulent concealment claim.  Accordingly, Defendants' Motion to Dismiss should be granted with regard to Plaintiff's common law claims.[2]

**ESTOPPEL (CLAIM FIVE)**

Plaintiff's Fifth Claim for Relief is captioned "Estoppel". (FAC, p.28). Plaintiff alleges, *inter alia,* that Defendant MLIC's "actions highlighting Jose C. Reynoso's eligibility for $300,000 in accidental death insurance coverage as well as recommending

---

[2] Defendants also argue that Plaintiff's common law claims are subject to dismissal under the economic loss doctrine.  Because Plaintiff fails to state a claim for her common law theories, the Court need not address that argument.

- 11 -

$300,000 in coverage, agreeing to provide the $300,000 death benefit to the Plaintiff and accepting the premium for $300,000 coverage while at the same time concealing the fact that because…Reynoso was over the age of 70 the coverage was reduced by 50% led…Reynoso to purchase what he was led to believe was $300,000 in coverage from the Defendant [MLIC] rather than some other insurance company or additional coverage." (FAC, ¶82). Plaintiff also alleges that the representations in the Activation Form reasonably led Reynoso to believe that he had purchased $300,000 in coverage for Plaintiff's benefit, caused Reynoso to lose $150,000 in coverage and caused Plaintiff to lose $150,000 in death benefits. (FAC, ¶¶83-84).

Plaintiff does not specify the form of estoppel upon which she relies. Defendants contend that equitable estoppel is available only as a defense. Defendants argue, alternatively, that Plaintiff fails to state a claim for equitable estoppel, and that she also fails to state a claim for promissory estoppel. (Motion, pp. 9-10; Reply, p. 6-8).

Plaintiff does not state in her Response which theory of estoppel she alleges. Arizona courts have acknowledged that there is no Arizona "'authority for the proposition that estoppel must be specifically plead as equitable or promissory estoppel.'" *Gorman v. Pima County,* 230 Ariz. 506, 287 P.3d 800, 804 n.4 (App. 2012) (quoting *Tiffany Inc. v. W.M.K. Transit Mix Inc.,* 16 Ariz.App. 415, 419, 493 P.2d 1220, 1224 (1972)); *see also Kramer v. Ocwen Loan Servicing, LLC,* 2014 WL 1827158, *7 (D. Ariz. May 8, 2014)(noting that "Arizona courts have treated claims for equitable estoppel as claims for promissory estoppel where plaintiffs have adequately alleged the elements of promissory estoppel."). However, consistent with Defendants' position, Arizona courts have also observed that equitable estoppel is available only as a defense and promissory estoppel is used as cause of action for damages. *Id.* (citing *Tiffany,* 16 Ariz. App. at 419, 493 P.2d at 1224); *see also Raup v. Wells Fargo Bank, NA,* 2013 WL 3216175, *11 (D.Ariz. June 25, 2013). Nonetheless, Plaintiff cites to an Arizona Supreme Court opinion finding sufficient evidence to support a judgment in favor of the plaintiff for "estoppel", in a case where the plaintiff pled promissory estoppel, the jury was instructed on "estoppel", and on appeal the plaintiff asserted it successfully presented

1 a case for "estoppel". *St. Joseph's Hosp. and Medical Center v. Reserve Life Insur. Co.,*
2 154 Ariz. 307, 317, 742 P.2d 808, 818 (1987). The *St. Joseph's* court stated that:

> Estoppel in pais includes all forms of estoppel not arising from a record, from a deed, or from a written contract; estoppel in pais, equitable estoppel and estoppel by misrepresentation are interchangeable names for the same action….A claim for estoppel arises when one by his acts, representations or admissions intentionally or through culpable negligence induces another to believe and have confidence in certain material facts and the other justifiably relies and acts on such belief causing injury or prejudice.

*Id.* (citations omitted). Plaintiff points out that *St. Joseph's* has not been overruled. Arguably, *St Joseph's* can be distinguished because that case did not involve an objection to the plaintiff's ability to allege a claim for equitable estoppel.  In any event, this Court need not decide here whether Arizona allows a claim, rather than a defense, based on equitable estoppel because as discussed below, even if Arizona allowed such a claim, Plaintiff fails to allege facts to support it.  Plaintiff also fails to state a claim for promissory estoppel.

"Equitable estoppel involves, generally speaking, an affirmative misrepresentation of a present fact or state of facts and detrimental reliance by another thereon." *Tiffany Inc.,* 16 Ariz. App. at 419, 493 P.2d at 1224.  "To prove promissory estoppel, [plaintiff] must show that the defendants made a promise and should have reasonably foreseen that [plaintiff] would rely on that promise; [plaintiff] must also show that [s]he actually relied on the promise to [her] detriment." *Higginbottom v. State,* 203 Ariz. 139, 144, 51 P.3d 972, 977 (App. 2002).  Further, the plaintiff "can only recover under the theory of promissory estoppel if [s]he had a 'justifiable right to rely' on the alleged promise." *Id.* (quoting *Trollope v. Koerner,* 106 Ariz. 10, 18, 470 P.2d 91, 99 (1970)).  "Reliance is justified when it is reasonable, but is not justified when knowledge to the contrary exists." *Id.* (internal quotation marks and citation omitted).  At bottom, "[t]he critical distinction between [equitable and promissory estoppel]…is that equitable estoppel refers to reliance on a misrepresentation of some present or past fact, whereas, promissory estoppel rests upon a promise to do something in the future.…With that exception

- 13 -

promissory estoppel includes all elements of equitable estoppel." *Gorman,* 230 Ariz. at 510 n. 4, 287 P.3d at 804 n.4 (internal quotation marks and citations omitted).

Plaintiff provides no explanation in her Response as to how her allegations state a claim under either theory. In asserting her estoppel claim, Plaintiff's does not allege that Defendants made any misrepresentations or promises to her upon which she relied to her detriment. Indeed, as Defendants point out, Plaintiff does not allege that she was even aware of the Activation Form or Policy before Reynoso's death. Consequently, Plaintiff fails to state a claim for "estoppel", be it promissory estoppel or equitable estoppel.

**CONCLUSION**

Plaintiff should be permitted to proceed on her claims of statutory fraud under Arizona's Consumer Fraud Act, A.R.S. §44-1521, *et seq.,* (Claim One) and Unfair Insurance Practices Act, A.R.S. §20-443, *et seq.,* (Claim Two). However, Plaintiff's common law and estoppel claims (Claims Three through Five) should be dismissed for failure to state a claim.

Plaintiff requests leave to file a Second Amended Complaint should Defendants' Motion be granted. (Response, p. 23). Plaintiff has not suggested that she can plead facts which would resurrect her claims that are subject to dismissal here. Nonetheless, because leave to amend should be given freely and the Court cannot say that the pleading "could not possibly be cured by the allegation of other facts," *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv., Inc.,* 911 F.2d 242, 247 (9th Cir. 1990), the FAC should be dismissed with leave to amend.

**RECOMMENDATION**

For the foregoing reasons, the Magistrate Judge recommends that the District Court grant in part and deny in part Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 22). Defendants' Motion should be granted to the extent that Plaintiff's common law and estoppel claims, set out at Claims Three through Five, should be dismissed with leave to amend. The Motion should be denied as to Plaintiff's claims for statutory fraud, set out at Claims One and Two.

Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure and LRCiv 7.2(e), Rules of Practice of the U.S. District Court for the District of Arizona, any party may serve and file written objections within **FOURTEEN (14) DAYS** after being served with a copy of this Report and Recommendation.  A party may respond to another party's objections within **FOURTEEN (14) DAYS** after being served with a copy.  Fed.R.Civ.P. 72(b)(2).  No replies to objections shall be filed unless leave is granted from the District Court to do so. If objections are filed, the parties should use the following case number: **CV 14-2022-TUC-FRZ**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may be deemed a waiver of the party's right to de novo review of the issues.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), i, 540 U.S. 900 (2003).

Dated this 16th day of January, 2015.

CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE

- 15 -